UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARTONE PLACE, LLC, et al., )
    Plaintiffs, )
)
            v. ) C.A. No. 16-cv-30170-MAP
)
CITY OF SPRINGFIELD, et al., )
    Defendants. )

MEMORANDUM AND ORDER RE:
REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANTS' MOTION TO DISMISS
(Dkt. Nos. 10 & 31)

November 29, 2017

PONSOR, U.S.D.J.

I. INTRODUCTION

Martone Place, LLC ("Martone") and HDC Four, LLC ("HDC") ("Plaintiffs") have filed this lawsuit against the City of Springfield; Department of Public Works ("DPW") director Christopher Cignoli; Office of Planning and Economic Development ("OPED") director Philip Dromey; Building Commissioner Steve Desilets; and former DPW director Allan R. Chwalek ("Defendants") individually and in their official capacities. Plaintiffs contend that Defendants deliberately and improperly interfered with Plaintiffs' effort to obtain a building permit and thereby

caused the loss of a profitable contract with the Massachusetts Department of Transportation ("MassDOT"). The complaint contains counts asserting violations of Plaintiffs' federal due process and equal protection rights (Counts I and II) as well as violations of Massachusetts state law (Counts III, IV, V, and VI). In response, Defendants have moved to dismiss for failure to state a claim upon which relief could be granted. (Dkt. No. 10.)

The motion was referred to Magistrate Judge Katherine A. Robertson for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72. On August 22, 2017, Judge Robertson issued her recommendation, meticulously laying out the alleged facts, summarizing the applicable law, and analyzing the merits of each of the counts of the complaint. (Dkt. No. 31.) She recommended that Defendants' motion to dismiss be allowed as to both federal counts and as to all state counts except Count IV, which asserts a claim for tortious interference with contractual relations. She noted, however, that the dismissal of the federal claims gave this court discretion to dismiss the state law claims without prejudice to their

re-filing in state court.

Plaintiffs filed a timely objection solely as to the federal counts. (Dkt. No. 35.) Defendants filed no objection to the recommendation regarding Count IV. Upon <u>de novo</u> review, the court will adopt Judge Robertson's recommendation, allow the motion to dismiss as to Plaintiffs' federal claims with prejudice, allow the motion to dismiss with prejudice as to all but one of the state claims based on the absence of any objection to the Recommendation, and allow the motion to dismiss Count IV, but without prejudice to its re-filing in state court.

## II. FACTUAL BACKGROUND

A comprehensive recitation of the facts is unnecessary. Judge Robertson's thorough fifty-two-page Report and Recommendation summarizes the somewhat labyrinthine course of the parties' interactions in detail; it is attached and should be viewed as adopted in this memorandum. <u>See</u> Exhibit A. Plaintiffs' objections, in any event, do not assert any explicit misstatement of facts by Judge Robertson in her Report and Recommendation, though they do express disagreement with the Report's use of the term "condition"

in a portion of its discussion.

The salient facts, stringently compressed for purposes of this memorandum but fully available in the Report and Recommendation, are as follows.

In 2013, the Massachusetts Division of Capital Asset Management and Maintenance ("DCAMM") awarded Plaintiffs a contract to construct a new Registry of Motor Vehicles ("RMV") building on property they owned at 36 Martone Place in Springfield. The existing RMV facility was grossly outdated so the schedule for construction of the new building was tight; the contract required substantial completion of the project within seven months. Based on the award of this contract, Plaintiffs entered into a ten-year lease with MassDOT.

Plaintiffs submitted an application for administrative site plan review to OPED on May 6, 2014. On May 7, 2014, OPED informed Plaintiffs that their application was incomplete. Sometime thereafter, Plaintiffs filed an amended application, and on June 12, 2014, OPED confirmed that it was complete, meaning the review of the application could begin. On July 1, 2014, OPED issued a Conditional

Approval; in the weeks that followed, Plaintiffs engaged in numerous communications with Defendants, written and oral, in an effort to get final approval of their project.

Plaintiffs allege that they met with deliberate, improper resistance from Defendants during the review and permitting process. In particular, they contend that by requiring a review of their application by DPW, OPED effectively inserted a separate and improper DPW mechanism into the approval process, which Plaintiffs were unable to challenge by invoking the available state legal remedies. According to Plaintiffs, Defendants used this concocted, and unreviewable, DPW approval tool to draw out the overall approval process, with the result that Plaintiffs were unable to complete the project within the required time frame. Approximately eight months after the date for substantial completion, MassDOT terminated its lease with Plaintiffs.

### III. DISCUSSION

Well-established authority makes clear that supplemental state law claims may, and usually should, be dismissed when all underlying federal claims are dismissed

at the outset of a case. 28 U.S.C. § 1367(c)(3); see also United States ex. rel. Kelly v. Novartis Pharm. Corp., 827 F.3d 5, 15 (1st Cir. 2016) (citing Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)). Although the federal court has discretion in the matter, "the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state law claims." Doral Mortg. Corp., 57 F.3d at 1177 (citation omitted). "[I]f these [factors] are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citation omitted).

The First Circuit has noted that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998); Doral Mortg. Corp., 57 F.3d at

1177; Brough v. United Steelworkers of Am., AFL-CIO, 437 F.2d 748, 750 (1st Cir. 1971). Furthermore, as the Supreme Court has remarked:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (citation omitted). Judicial economy, convenience, fairness, and comity all weigh in favor of discretionary dismissal in this case.

The review of the state law claims has been facilitated here, since neither party has filed an objection to Judge Robertson's recommended disposition of these counts. This memorandum will therefore focus on Plaintiffs' federal claims, the alleged violations of substantive due process, equal protection, and procedural due process.

A. Substantive Due Process

To demonstrate a substantive due process violation, "a plaintiff must prove that a deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States was carried out by persons acting

under color of state law." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008) (quoting 42 U.S.C. § 1983 (2000)). In the context of land use claims, the First Circuit has repeatedly cautioned that "'the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong.'" Mongeau v. City of Marlborough, 492 F.3d 14, 17 (1st Cir. 2007) (quoting Pagán v. Calderón, 448 F.3d 16, 33 (1st Cir. 2006)). To survive a motion to dismiss, "a plaintiff must allege behavior on the part of the defendant that is so outrageous that it shocks the conscience." Mongeau, 492 F.3d at 19.

When considering whether behavior is conscience-shocking,

> one of the problems with adjudicating claims of "bias" or "animus" in the zoning context is that "[e]very appeal by a disappointed developer from an adverse ruling by a local . . . planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason."

Id. (quoting Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982)). The First Circuit has "generally

been hesitant 'to involve federal courts in the rights and wrongs of local planning disputes' unless there is a 'truly horrendous situation[].'" Mongeau, 492 F.3d at 19 (quoting Néstor Colón Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)).

As discussed at length in the Report and Recommendation, these authorities make it clear that the facts as alleged in the complaint simply do not describe a scenario sufficiently egregious to support a claim for a substantive due process violation. Vague allegations of a conspiracy between various city officials to frustrate a plaintiff, a supposed "outsider," and assist some other party, a supposed "insider," could easily be asserted in virtually all hotly contested land use disputes. While these allegations might be sufficient to make out a claim under a Massachusetts statute or state common law theory, they are insufficient to lay a foundation for a federal constitutional claim. In the absence of sufficiently compelling concrete allegations, Plaintiffs cannot allege generally that Defendants engaged in behavior that "shocks the conscience" in the hope that during discovery some evidence will appear to support their claim. Similarly, it

is too late now to suggest, without details, that they might amend the complaint to sharpen their allegations.

In sum, Judge Robertson was correct in concluding that this litigation is, in essence, a garden variety land-use dispute that in no way implicates substantive due process.

B. Equal Protection

To succeed on an equal protection claim, a plaintiff must prove "'that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995)).

Plaintiffs do not claim membership in a protected class; they assert instead that Defendants unfairly singled them out as a "class of one." To prevail on a "class-of-one" claim, Plaintiffs must show, among other things, that they were "'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Freeman, 714 F.3d at 38

(quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

The First Circuit requires "class-of-one" claims to have "'an extremely high degree of similarity between [the plaintiffs] and the persons to whom they compare themselves.' In the land-use context, this means more than 'point[ing] to nearby parcels in a vacuum and leav[ing] it to [the defendant] to disprove conclusory allegations that the owners of those parcels are similarly situated.'" Freeman, 714 F.3d at 38 (quoting Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007)).

Plaintiffs allege that Defendants intentionally singled them out for unfavorable treatment without any rational basis and point to another project -- the Davenport Advisors' RMV project -- as a comparator. (Dkt. Nos. 1 at 18; 20 at 11.) Plaintiffs do not, however, identify any specific similarities between the two projects or differences in the treatment of the two applications. Instead, they argue that the pleading standard should be relaxed, and they should be allowed to pursue discovery in the hope of turning up evidence to support their theory.

As the Report and Recommendation properly found,

conclusory allegations of this nature are insufficient to avoid dismissal. Because Plaintiffs have not alleged anything close to "an extremely high degree of similarly" between themselves and a comparator, their equal protection claim must fail. For this reason, it is unnecessary to discuss the other elements of a "class of one" claim.

C. <u>Procedural Due Process</u>

Plaintiffs' procedural due process argument is straightforward: OPED's requirement that they obtain approvals required by the DPW prior to issuance of a building permit created a process outside the law, which they could not challenge through any available legal forum.

Plaintiffs' argument does not withstand scrutiny, for two reasons. First, as the Report and Recommendation points out, "the Zoning Ordinance mandated DPW's involvement in OPED's administrative site plan review." (Dkt. No. 31 at 20.) Based on this mandate, OPED was permitted to impose the requirements set by the DPW. Second, if Plaintiffs felt prejudiced by these DPW-created requirements, they had a remedy set forth in the state Zoning Ordinance via an appeal to the Zoning Board of Appeals and thereafter to the state land court, superior court, or housing court. (<u>Id.</u> at 21-

22.)

Because OPED acted within its authority in imposing DPW's requirements, and because the reasonableness of these requirements was appealable through an available state law legal process, no claim for a violation of procedural due process under the Federal Constitution will lie.

IV. CONCLUSION

For the reasons summarized above, the Report and Recommendation (Dkt. No. 31), upon *de novo* review, is hereby ADOPTED in its entirety. The court, in its discretion, declines to exercise jurisdiction over Plaintiffs' one remaining state claim. Defendants' motion to dismiss (Dkt. No. 10) is hereby ALLOWED, as follows: Counts I and II of Plaintiffs' complaint are dismissed with prejudice based on their lack of merit; Counts III, V, and VI are dismissed with prejudice based on the lack of any objection to the Report and Recommendation; and Count IV is dismissed without prejudice to its refiling in state court. The clerk will enter judgment for Defendants. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. District Judge